# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE ESTATE OF DONALD AMBURGY, THROUGH
PERSONAL REPRESENTATIVE PATRICIA KRUSE,
THE ESTATE OF ETHELYN AMBURGY, THROUGH
PERSONAL REPRESENTATIVE PATRICIA KRUSE,
LAWRENCE AMBURGY,
ALICE BARCZAK,
CAROL BARCZAK,
DAVID BARCZAK,
EDWARD BARCZAK,
JAMES BARCZAK,
LENORE BARCZAK,
MICHAEL BARCZAK,
MICHAEL "MIKE" BARCZAK,
CATHERINE BELLINO,
THE ESTATE OF LAVOM K. CHUDIGIAN, THROUGH
PERSONAL REPRESENTATIVE JUDITH CHUDIGIAN,
SUE COTE,
MARY DAMROW,
MARIANNE DAY,
THE ESTATE OF JOSE DELGADO, THROUGH PERSONAL
REPRESENTATIVES DANIEL DELGADO AND RALPH
DELGADO,
LISA DONEGAN,
JUNE DUCHARME,
SHARON GOODMANN,
LINDA JAGLA,
LESLIE JOHNSON,
DIANE KIEPE,
PATRICIA KRUSE,
MICHAEL LAZANSKY,
PETE LAZANSKY,
THOMAS LAZANSKY,
THE ESTATE OF JACK MCCARTY, THROUGH PERSONAL
REPRESENTATIVE VICTOR AMBURGY,
ANN MCDONOUGH,
SUSAN OLSON,
KILEY O'MEARA,
THE ESTATE OF FRANCES REYNOLDS, THROUGH
PERSONAL REPRESENTATIVE JUNE DUCHARME,
DIANE ROGERS,
THE ESTATE OF FRANK L. STEVENS, SR., THROUGH

CASE NO. 1:19-CV-00853-RJL

PERSONAL REPRESENTATIVE PAULA SUKEFORTH,
CARL SUKEFORTH,
THE ESTATE OF HAROLD S. SUKEFORTH, THROUGH
PERSONAL REPRESENTATIVE PAULA SUKEFORTH,
PAUL SUKEFORTH,
PAULA SUKEFORTH,
JOAN THORNLEY,
LYNETTE ZINNA,

            Plaintiffs,
   v.

THE ISLAMIC REPUBLIC OF IRAN
Ministry of Foreign Affairs
Khomeini Avenue
United Nations Street
Tehran, Iran,

            Defendant.

**AMENDED COMPLAINT FOR DAMAGES FOR STATE-SPONSORED TERRORISM
UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT**

## I.     INTRODUCTION

1.     This action is based on the hijacking of TransWorld Airlines ("TWA") Flight 847

after departing from Athens, Greece on June 14, 1985.  The above-listed Plaintiffs ("Plaintiffs")

seek money damages from Iran as compensation for severe pain and suffering caused by Iran's

provision of material support and resources to the hijackers for acts of terrorism, including

aircraft sabotage, hostage taking, and torture, as well as the underlying torts of assault, battery,

solatium, false imprisonment, and intentional infliction of emotional distress.

2.     Plaintiffs bring this action pursuant to the antiterrorism provision of the Foreign

Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA"), which affords U.S. victims of

state-sponsored terrorism a private right of action against the foreign state responsible for a

terrorist act.  Foreign states are held liable when they provide material support or resources for acts of terrorism.

## II.     PARTIES

3.      Jose Delgado, John McCarty, and Frances Reynolds were passengers aboard TWA 847 at the time of the hijacking.  Their estates are Plaintiffs in this action.  Victor Amburgy, Jerome Barczak, Judy Cox Barkley, Judith Chudigian, Gisela Delgado, George and JoAnn Lazansky, Paula Sukeforth and Frank Walsh were also passengers on TWA 847.  Most were plaintiffs in a prior action brought against Iran for its material support of the hijackers, *Allan, et al. v. Iran*, Case No. 1:17-cv-00338-RJL.  Plaintiffs in this action, including the estates of John McCarty, Jose Delgado, Donald and Ethelyn Amburgy, Harold S. Sukeforth, Lavom Chudigian and Frank Leslie Stevens are/were immediate family members, or personal representatives of estates of immediate family members, of Victor Amburgy, Jerome Barczak, Judy Cox Barkley, Judith Chudigian, Gisela Delgado, George and JoAnn Lazansky, Frances Reynolds, Paula Sukeforth or Frank Walsh.  All Plaintiffs, or the individual(s) they represent, were at the time of the hijacking U.S. citizens within the meaning of 8 U.S.C. § 1101(a)(22).

4.      Defendant, the Islamic Republic of Iran ("Iran"), is a foreign sovereign and a foreign state within the meaning of FSIA § 1602.

5.      Iran provided material support to the hijackers, as defined by 18 U.S.C. § 2339A, in the form of expert advice and assistance, significant financial support and resources, training, facilities, weapons, personnel, and logistical aid.  This includes material support to Hezbollah terrorists who hijacked the aircraft and to their Amal terrorist reinforcements (collectively, the "terrorists") for the above-enumerated terrorist acts.  Iran also provided material support to the

terrorists who held dozens of passengers as well as the flight crew captive in Beirut, Lebanon after they were removed from the aircraft (hereinafter, the "captors").

## III.    JURISDICTION AND VENUE

6.      Jurisdiction in this action is based on 28 U.S.C. § 1330(a), which provides:  "The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement."

7.       Iran is not immune from the court's jurisdiction in this action based on FSIA § 1605A(a)(1), the "terrorism exception" to foreign sovereign immunity.  Section 1605A(a)(1) provides in relevant part, that a foreign state "shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture . . . aircraft sabotage, hostage taking, or the provision of material support or resources for such an act."

8.      Iran is subject to personal jurisdiction by virtue of 28 U.S.C. § 1330(b), which provides: "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title."

9.      Venue is proper in this Court under 28 U.S.C. § 1391(f)(4), which provides in pertinent part that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## IV.    CLAIMS FOR RELIEF

10.      Plaintiffs re-allege paragraphs 1-9.

3

11.     Plaintiffs bring this action pursuant to 28 U.S.C. § 1605A(c), which affords Plaintiffs a private right of action against Iran as a state sponsor of terrorism that provided material support and resources to the terrorists and captors referenced above.  28 U.S.C. § 1605A(c) provides, in relevant part, that a "foreign sovereign that is . . . a state sponsor of terrorism as described in subsection (a)(2)(A)(i) . . . shall be liable to . . . a national of the United States . . . for personal injury or death caused by acts described in subsection (a)(1) of that foreign state . . . for which the courts of the United States may maintain jurisdiction under this section for money damages.  In any such action, damages may include economic damages, solatium, pain and suffering . . . ."  The acts described in 28 U.S.C. § 1605A(a)(1) include "the provision of material support or resources" for acts of "torture . . . aircraft sabotage [or] hostage taking."

12.     Since January 23, 1984, Defendant Iran has been designated a state sponsor of terrorism by the U.S. Secretary of State pursuant to, *inter alia*, Section 6(j) of the Export Administration Act of 1979 – 50 U.S.C. Appendix § 2405(j).

13.     As defined by Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, the hijackers of TWA Flight 847 committed aircraft sabotage by (i) committing acts of violence against Victor Amburgy and John McCarty, Jerome Barczak, Judy Cox Barkley, Judith Chudigian, Jose and Gisela Delgado, George and JoAnn Lazansky, Frances Reynolds, Paula Sukeforth and Frank Walsh while they were passengers on board an aircraft in flight which endangered their safety on that aircraft and (ii) placing grenades and other explosives on board the aircraft.

14.     As defined by Article 1 of the International Convention Against the Taking of Hostages, the hijackers of TWA Flight 847 committed hostage-taking where they detained

4

Victor Amburgy and John McCarty, Jerome Barczak, Judy Cox Barkley, Judith Chudigian, Jose

and Gisela Delgado, George and JoAnn Lazansky, Frances Reynolds, Paula Sukeforth and Frank

Walsh for varying periods of time within a seventeen day period and repeatedly threatened to

kill, injure or continue to detain them if their demands were not met.

15.     The hijackers additionally threatened Victor Amburgy and John McCarty, Jerome

Barczak, Judy Cox Barkley, Judith Chudigian, Jose and Gisela Delgado, George and JoAnn

Lazansky, Frances Reynolds, Paula Sukeforth and Frank Walsh with guns, knives and grenades;

pistol-whipped passengers and otherwise battered them; denigrated their religions, ethnicities,

nationalities, and country of residence – the United States; deprived them of sleep and food;

robbed them of their belongings, including invaluable jewelry such as wedding and engagement

rings; forced them to remain in extremely painful positions for long periods of time; repeatedly

pointed unloaded or partially loaded weapons at passengers and pulled the trigger (*i.e.* "Russian

roulette"); screamed accusations at passengers that they were members of U.S. intelligence

agencies and would be killed; paraded hostages in front of the media at gunpoint; conducted a

mock execution in which hostages were lined up against a wall in Beirut by guards with guns;

forced hostages to watch propaganda films containing footage of atrocities; used hostages as

bargaining chips in a geo-political conflict; and even murdered one passenger (not a plaintiff in

this action) and threw him from the aircraft onto the tarmac at the airport in Beirut.

16.     As defined by Section 3 of the Torture Victim Protection Act of 1991, 28 U.S.C.

§ 1350, the hijackers of TWA Flight 847 committed torture by intentionally inflicting physical

and psychological injuries upon Victor Amburgy and John McCarty, Jerome Barczak, Judith

Chudigian, Judy Cox Barkley, Jose and Gisela Delgado, George and JoAnn Lazansky, Frances

Reynolds, Paula Sukeforth, and Frank Walsh for the purpose of intimidating and coercing them,

as well as third parties, into compliance with their demands.  These acts also harmed the family members of these passengers.

17.     Plaintiffs seek a judgment from this Court holding Iran legally responsible for these heinous acts of terrorism, aircraft sabotage, hostage taking and torture, and awarding Plaintiffs money damages for the acts of assault, battery, false imprisonment, and intentional infliction of emotional distress committed, as well as for solatium.

18.     On June 14, 1985, TWA Flight 847 took off from Athens, Greece bound for Rome, Italy with eight crew members and 143 passengers, including Victor Amburgy and John McCarty, Jerome Barczak, Judy Cox Barkley, Judith Chudigian, Jose and Gisela Delgado, George and JoAnn Lazansky, Frances Reynolds, Paula Sukeforth and Frank Walsh on board.

19.     Shortly after takeoff, two terrorist hijackers armed with hand grenades commandeered the plane at gunpoint.  The individuals were later identified as Mohammed Ali Hamadi ("Hamadi") and Hassan Izz al-Din ("Izz al-Din").  A third hijacker, Ali Atwa ("Atwa") joined Hamadi and Izz al-Din on the plane the following day.  All three men (collectively, the "hijackers") were members of Hezbollah, a recognized terrorist organization, and have since been indicted by this Court for the hijacking of TWA Flight 847.  *United States v. Ali Atwa, et al.*, 1:85-cr-00405-1 (D.D.C. Nov. 14, 1985).

20.     The hijackers ordered the plane to fly to Algeria or Iran.  The flight crew persuaded the hijackers that the plane did not have enough fuel, at which point the hijackers ordered the plane to divert to Beirut, Lebanon for refueling.  The hijackers pistol-whipped and otherwise physically and psychologically abused the members of the cabin crew, including placing a gun to the head of the pilot, Captain John Testrake, in order to coerce their compliance.

21.     The hijackers ordered the passengers to put their hands on their heads and bend forward so that their heads were below the tops of the seats in front of them.  This "TWA position," when held for hours at a time, proved torturously painful to the passengers. Passengers who failed to keep the position for even a moment were struck violently.  During the flight to Beirut, the hijackers screamed at, intimidated, and otherwise terrorized, assaulted and battered Plaintiffs – treatment that continued throughout their ordeal.

22.     After landing in Beirut, the hijackers began to beat two passengers, neither of whom are plaintiffs in this case, in order to coerce the Beirut airport personnel into providing fuel for the aircraft.  The sounds of the violent beatings caused extreme fear and distress.  At this time, the hijackers issued demands for the release of nearly eight-hundred prisoners in Israel and Kuwait, in exchange for the release of the TWA Flight 847 hostages.

23.     The hijackers then instructed Captain Testrake to fly to Algiers, Algeria.  On the ground in Algiers, the hijackers repeatedly threatened to execute an American passenger every five minutes unless their demands were met, including a demand for more fuel.

24.     The hijackers raised the level of fear and intimidation by prohibiting any maintenance personnel to board the aircraft in Algiers and again ordered the plane back to Beirut.  As the airplane approached Beirut for the second time, the Beirut airport authorities placed obstacles on the runway and turned off all the lights in order to dissuade the hijackers from landing.  The hijackers insisted that the plane land regardless of the obstacles, even if it crashed.  The flight crew announced to the passengers that they should brace for a crash landing in the dark.  Panic and extreme fear spread throughout the plane.  As the aircraft approached the runway, the obstacles were removed at the last minute.

7

25.     On the ground in Beirut for the second time, the hijackers demanded that reinforcements from Amal, a Lebanese military group affiliated with Hezbollah, be allowed to board the plane.  When their demands were not met, they executed one passenger, Robert Stethem, who is not a Plaintiff in this action, by gunshot to the head and shoved his body from the plane onto the tarmac.  Shortly after Mr. Stethem's body was cruelly pushed from the plane, one of the hijackers shouted numbers to indicate the order in which passengers would be next to be executed, causing extreme terror and distress to those passengers.  Soon thereafter, approximately ten reinforcements from Amal dressed in military uniforms boarded the plane, adding further to the passengers' anguish.

26.     The hijackers then instructed Captain Testrake to fly the plane back to Algeria, and finally back again to Beirut.  TWA Flight 847 ended its odyssey, landing in Beirut on June 16, 1985.  During the nearly 72-hour long ordeal on board the aircraft, many of the passengers were brutally and repeatedly assaulted by their captors.  The ordeal involved numerous acts of assault, battery and threats, excruciating pain (including as a result of being forced to maintain the TWA position) and stark terror in expectation of either an imminent violent death or prolonged captivity.

27.     Although women and children, and some men, were released from the plane during stops in Algiers and Beirut, the ordeal was hardly over for the passengers still aboard, including Victor Amburgy and John McCarty, Jerome Barczak, and George Lazansky.  In the early morning hours of June 17, 1985, they were removed from the plane to be held hostage on the ground in Beirut for the next fourteen days.  The captors moved the hostages, including those Plaintiffs, between various hiding places in the middle of war-torn Beirut.  The hostages, including those Plaintiffs, were lined up by their captors in a Beirut parking garage and caused to

believe that they would be executed by a firing squad.   The hostages, including Victor Amburgy and John McCarty, Jerome Barczak, and George Lazansky, were confined under deplorable conditions, tormented with daily threats of torture and death, and vilified as citizens of a despised nation, all the while made to fear for their fate.

28.     On June 30, 1985, the hostages were released to Syrian military personnel and ultimately flown home to the United States.

29.     As the aircraft crisscrossed between Algiers and Beirut, and for the next two weeks for those held in Beirut, the immediate family members of the passengers suffered greatly from the uncertainty of what would happen to their loved ones – and from knowing that they were, at minimum, being brutalized and held hostage.  Through detailed media coverage of the event, family members saw the hijackers pointing weapons at Captain Testrake.  As news broke in the United States of the hijacking, audio of the plane's crew pleading with airport staff in Beirut that "they are beating the passengers" and "they are threatening to kill the passengers" was broadcast widely by major news outlets.  Family members spent many excruciating days waiting, and expecting, to hear that their loved ones had been murdered.

30.     During the ordeal and afterwards, many of the passengers and their family members were also harassed by unrelenting members of the press, who invaded their privacy, exposed private details of their lives to a national audience, and caused them to feel humiliated and afraid.

31.     Plaintiffs experienced, and many continue to experience, severe emotional, psychological and/or physiological impacts and symptoms, fear, anxiety, panic, humiliation, irritability, insomnia, nightmares, survivor's guilt, depression, hopelessness, paranoia, and other adverse symptoms.

32.     In *Allan, et al. v. Islamic Republic of Iran*, Case No. 1:17-cv-00338 RJL (D.D.C. May 21, 2019), this Court awarded damages to 108 plaintiffs, all passengers and crew of TWA Flight 847, and their family members.  In *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 85 (D.D.C. 2002), this Court awarded damages to the estate and immediate family members of Robert Stethem, as well as six additional passengers (five Navy divers and one Army Reserve Major) and their spouses who were not aboard the plane.  Iran has also been held liable for the terrorist hijacking of Kuwait Airways Flight 221 only a few months before the hijacking of TWA Flight 847, involving substantially similar tactics and planning carried out with Iran's support. *Kapar v. Islamic Republic of Iran*, No., 2004 U.S. Dist. LEXIS 29416 at *1-3 (D.D.C. 2004) (The "methods" of the "Iranian-sponsored Hezbollah terrorists" who hijacked Kuwait Airways Flight 221 "were replicated in Hezbollah's hijacking of TWA flight # 847 in June 1985.").

33.     In *Allan*, this Court held that Iran "provided 'material support' to terrorist groups Hezbollah and Amal" for the hijacking of TWA Flight 847.  *Allan*, Case No. 1:17-cv-00338 RJL, ECF 77 at *9.  In support of that finding, this Court examined and took judicial notice of the evidentiary record in *Stethem*, 201 F. Supp. 2d 78, as well as the updated evidence (including an updated expert report by Patrick Clawson) submitted by the *Allan* Plaintiffs.  *Id.* at *6.  Both the *Allan* and *Stethem* courts reached the conclusion that "extensive documentary evidence from U.S. intelligence sources connecting Hizballah to Iran," *Stethem*, 201 F. Supp. 2d at 85, shows that Iran materially aided Hezbollah to carry out the hijacking of TWA Flight 847, *Allan*, ECF 77 at *9.

## Assault and Battery

34.     The hijackers and/or captors intentionally engaged in harmful physical contact or intentionally caused Jose Delgado, John McCarty, Frances Reynolds, and Paula Sukeforth

imminent apprehension of such contact.  As a result, the hijackers and/or captors assaulted these Plaintiffs within the meaning of assault under the Second Restatement of Torts ("Restatement"), Section 21, and committed battery on Plaintiffs within the meaning of Second Restatement Sections 13 and 18.  Accordingly, Iran is liable for these acts of terrorism and assault and battery.

## Outrageous Conduct Causing Severe Emotional Distress
### (*i.e.*, Intentional Infliction of Emotional Distress)

35.     The hijackers and/or captors intentionally or recklessly caused all Plaintiffs to suffer severe emotional distress.  Accordingly, Iran is liable for these acts of terrorism and intentional or reckless infliction of emotional distress under the Second Restatement of Torts, Section 46.

36.     The hijackers and/or captors also engaged in extreme and outrageous conduct to intentionally or recklessly cause Plaintiffs to suffer severe emotional distress due to the mistreatment of their immediate family members.  Accordingly, Iran is liable to Plaintiffs for intentional or reckless infliction of emotional distress under the Second Restatement of Torts, Section 46.  Indeed, all acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally terror, in their victims, including immediate family members of victims directly involved in attacks.

## False Imprisonment

37.     The hijackers and/or captors intentionally confined Jose Delgado, John McCarty, Frances Reynolds, and Paula Sukeforth within fixed boundaries on the aircraft, and on the ground in Beirut.  They were conscious of their confinement and harmed by it.  Accordingly, Iran is liable for these acts of terrorism and false imprisonment under the Second Restatement of Torts, Section 35.

11

**Solatium**

38.     As immediate family members of passengers on TWA Flight 847, all Plaintiffs, except for Paula Sukeforth and the estate of Frances Reynolds and, are entitled to solatium damages for emotional harm caused by the terrorists and/or captors.  Accordingly, Iran is liable for solatium damages.

39.     There is a reasonable connection between the acts of Iran complained of herein and the injuries and damages suffered by Plaintiffs.  Indeed, Iran's acts were the proximate cause of those injuries and damages.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1.     A speedy and final resolution of Plaintiffs' claims; and

2.     A Judgment against Iran holding Iran liable for the acts complained of herein; and

3.     A Judgment against Iran for money damages in an amount to be determined at trial in an amount not less than $60,000,000.

DATED:  August 29, 2019                    Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Mark N. Bravin
       Mark N. Bravin (D.C. Bar No. 249433)
       J. Matthew Williams (D.C. Bar No. 501860)
       Theresa B. Bowman (D.C. Bar No. 1012776)
       Attorneys for Plaintiff